Judge Richard A. Jones

UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>SCHUYLER PYATTE BARBEAU,<br><br>Defendant. | NO. CR15-391RAJ<br><br>**GOVERNMENT'S MOTION *IN LIMINE* REGARDING CERTAIN QUESTIONS OF LAW**<br><br>(Noted:  July 22, 2016) |

The United States of America, by and through Annette L. Hayes, United States Attorney for the Western District of Washington, and Thomas M. Woods, Assistant United States Attorney for said District, respectfully moves *in limine* to preclude the defense from arguing certain questions of law about which the Court has already ruled. Specifically, the government seeks an order precluding the defense from arguing at trial that Barbeau (1) had a Second Amendment right to possess the firearm in question; (2) had a legal justification to possess the firearm; (3) should be acquitted because he did not know it was illegal to possess an unregistered short-barreled rifle or machine gun.

//
//
//

Government's Motion i*n Limine*
*U.S. v. Barbeau*, CR15-391RAJ - 1

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

# BACKGROUND

### A. The Firearm

On June 5, 2015, the FBI received information from a Confidential Human Source ("CHS") regarding potential threats to law enforcement made by Schuyler Barbeau. The CHS advised that Barbeau frequently told the CHS that the federal government was not abiding by the principles set forth in the Constitution and that many public servants, such as judges and police officers who had sworn to uphold it, had deviated from their oath of office. Barbeau told the CHS that it was his duty to educate public servants who were not living up to their oath and discussed "lynching" those he deemed unworthy if necessary. In one instance, Barbeau told the CHS that he and other like-minded individuals would physically remove a California judge presiding over a misdemeanor weapons violation he received there in the fall of 2014.

The CHS advised Barbeau was always armed with a .45 caliber pistol and frequently traveled with a short-barreled AR-15 rifle ("SBR"), body armor, and a helmet in his vehicle. On October 19, 2015, Barbeau invited the CHS to a trailer he was occupying in Springdale, Washington, and discussed selling his SBR. Barbeau asked the CHS to find a buyer for him and allowed the CHS to take several photographs of the SBR. Barbeau informed the CHS that he willing to sell the SBR along with a longer barrel, optics, and other accessories, for 5,000 dollars.

On November 3, 2015, Barbeau contacted the CHS via telephone with additional information about the sale of his SBR. During the telephone conversation, Barbeau informed the CHS that he wanted to use the money from the sale to purchase a rifle capable of firing 7.62 millimeter rounds. Barbeau believed this type of rifle would be more effective in shoot-outs with law enforcement.

On November 8, 2015, the CHS met with Barbeau and informed him that he/she had a buyer interested in purchasing his SBR for the 5,000 dollars Barbeau had asked for previously. Barbeau told the CHS he would consider the offer.

Government's Motion in *Limine*
*U.S. v. Barbeau*, CR15-391RAJ - 2

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

On November 20, 2015, Barbeau contacted the CHS via a private Facebook message and asked him to tell the buyer he was ready to sell his SBR as soon as possible. The CHS told Barbeau the buyer was out of town for the upcoming Thanksgiving holiday, but offered to keep the SBR until the buyer returned. Barbeau agreed to let the CHS keep the SBR and arranged to meet the CHS the afternoon of November 22.

On the morning of November 22, 2015, Barbeau unexpectedly dropped off the SBR at the CHS's residence in the Western District of Washington and asked him to obtain the money from the buyer as soon as possible. Shortly after, Barbeau departed the residence, and the CHS contacted the FBI. Later that same morning, the FBI met with the CHS and took possession of the SBR.

On December 6, 2015, Barbeau was arrested at the Snoqualmie Weigh Station. Barbeau was armed with a pistol.

**B. The Auto Sear**

During the investigation, the CHS advised the FBI that Barbeau spoke on several occasions about manufacturing a "drop in auto-sear" for his rifle. A drop in auto-sear is a combination of parts designed and intended for use in converting a weapon to shoot automatically more than one shot, without manual reloading, by a single function of the trigger. Thus, an auto sear generally is considered a machine gun under federal law, and the use of an auto sear with a firearm generally transforms the firearm into a machine gun as defined by federal law.

On November 8, 2015, Barbeau referenced shooting down a hypothetical law enforcement helicopter and spoke in vague terms regarding his rifle firing in fully-automatic mode. According to a recording of the meeting, he stated: "Remember what I have on my rifle. It ain't no just . . . phew, phew, phew, phew." The CHS then asked Barbeau: "Did you get that thing to work?" Barbeau replied: "It works, but not good. But it works. And if I can ever find somebody with a 3D printer…." Recent developments in 3D printing have allowed individuals the capability to manufacture firearm parts, including auto-sears, using plans that are available on the internet.

Government's Motion in *Limine*
*U.S. v. Barbeau*, CR15-391RAJ - 3

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

On November 20, 2015, the CHS advised the FBI that on that same day, the CHS and Barbeau spoke on the telephone. This conversation was recorded. During the conversation, Barbeau and the CHS discussed new rifles that Barbeau was interested in buying. The CHS asked Barbeau if the auto-sear would work in the new guns being discussed. Barbeau responded: "Yeah."

### C. ATF's Examination of the Firearms

An ATF firearms specialist has examined the firearm that Barbeau gave to the CHS. The specialist has concluded that the firearm is a short-barreled rifle, as well as a machinegun. The firearm constitutes a machinegun for two reasons. First, the firearm contained the auto-sear device, which the specialist confirmed allowed the firearm to fire fully-automatically. Second, the specialist observed that the firearm fired fully-automatically even without the auto-sear device.

### D. The Charges

On February 25, 2015, a grand jury returned a superseding indictment charging Barbeau with (1) possessing an unregistered short-barreled rifle and machine gun, in violation of the National Firearms Act, 26 U.S.C. §§ 5861(d), 5845(a)(3), (6) and (2) unlawful possession of a machine gun, in violation of Title 18, United States Code, Section 922(o).

### E. The Previous Court Rulings

On February 23, 2016, the defense filed motions seeking: (1) dismissal of the indictment on the ground that Barbeau had a Second Amendment right to possess the firearm in question; (2) a jury instruction allowing the jury to find that Barbeau acted with legal necessity in possessing the firearm; (3) an order requiring the government to prove that Barbeau knew it was illegal to possess either a machine gun or a short-barreled rifle. Dkt. 24-26. On March 16, 2017, the Court denied the motions in full. Dkt. 35. Specifically, the Court held that (1) there is no Second Amendment right to possess either a machinegun or a short-barreled rifle; (2) Barbeau was not entitled to a legal justification jury instruction; (3) Barbeau also was not entitled to an instruction requiring the

Government's Motion in *Limine*
*U.S. v. Barbeau*, CR15-391RAJ - 4

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

government to prove that Barbeau knew it was illegal to possess either a machinegun or short-barreled rifle. Dkt. 35.

In light of this ruling, the government seeks an *in limine* ruling precluding the defendant from arguing to the jury that Barbeau (1) had a Second Amendment right to possess the firearm in question; (2) acted with legal necessity; and (3) should be acquitted because he did not believe it was illegal to possess the firearm in question. These three points are all questions of law about which the Court has already ruled, and are the proper subject of a pretrial ruling curtailing the arguments that can be made to the jury. *See generally United States v. Amparo*, 68 F.3d 1222, 1224 (9th Cir. 1995) (court decides questions of law, while jury decides questions of fact).

## CONCLUSION

For the foregoing reasons, the Court should grant the government's motion *in limine* regarding the topics outlined above.

DATED: July 12, 2016

Respectfully submitted,

ANNETTE L. HAYES
United States Attorney

*/s/ Thomas M. Woods*
THOMAS M. WOODS
Assistant United States Attorney
United States Attorney's Office
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
Telephone: (206) 553-7970

Government's Motion i*n Limine*
*U.S. v. Barbeau*, CR15-391RAJ - 5

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that he is an employee in the Office of the United States Attorney for the Western District of Washington and is a person of such age and discretion as to be competent to serve papers;

It is further certified that on July 12, 2016, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the CM/ECF participants.

 */s/ Thomas M. Woods*
THOMAS M. WOODS
Assistant United States Attorney
United States Attorney's Office
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
Phone: (206) 553-7970
Fax:   (206) 553-0755
E-mail: thomas.woods2@usdoj.gov

Government's Motion in *Limine*
*U.S. v. Barbeau*, CR15-391RAJ - 6

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970